**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

IN RE:
ALL PHASE STEEL WORKS, LLC,
    *Debtor.*

_____

ALL PHASE STEEL WORKS, LLC,
    *Appellant,*

    v.

PAC GROUP, LLC,
    *Appellee.*

No. 3:16-cv-00844 (JAM)

**RULING ON BANKRUPTCY APPEAL**

    This bankruptcy appeal involves the right of setoff for a general contractor who has been called upon to pay the debts of a breaching subcontractor against remaining amounts owed by that general contractor to the subcontractor. On June 1, 2016, the debtor-in-possession, All Phase Steel Works, LLC, appealed from an order of the bankruptcy court, *Manning, C.J.*, granting unsecured creditor PAC Group, LLC's motion for relief from stay to assert its right of setoff pursuant to 11 U.S.C. § 553(a). *See* 11 U.S.C. § 362(d)(1). For the reasons set forth below, the bankruptcy court's decision is affirmed.

**BACKGROUND**

    All Phase fabricates and installs steel for commercial construction projects, and PAC is the general contractor for two such projects: the Central Connecticut State University Dining Facility project (CCSU project) and the Mandell Jewish Community Center Project (JCC project). PAC hired All Phase as its steel subcontractor for both projects, and All Phase, in turn, hired its own sub-subcontractors to provide labor and/or materials for each project. Doc. #6-1 at

78 (CCSU); Doc. #6-1 at 94 (JCC). The relevant portions of both contracts are identical: All
Phase was obligated to pay its sub-subcontractors or suppliers no later than 30 days after it
received payment from PAC for the work of those sub-subcontractors or suppliers. Doc. #6-1 at
74 (CCSU); Doc. #6-1 at 98 (JCC). The contracts further granted PAC a right of setoff in the
event that All Phase failed to pay its sub-subcontractors:

> If the Subcontractor . . . fails to pay for labor and/or materials for which it has received
> payment from PAC, or fails in any respect to prosecute any covenant on its part to be
> performed, then, PAC shall have the right after delivery of three days written notice to
> the Subcontractor, and, without prejudice to any other remedy it may have, to make good
> such deficiencies and may deduct the cost thereof from the payments then or thereafter
> due the Subcontractor . . . .

Doc. #6-1 at 69 (CCSU); Doc. #6-1 at 95 (JCC).

In connection with the CCSU project, PAC obtained bonds from a surety, requiring PAC
to "promptly pay for all materials furnished and labor supplied or performed in the prosecution
of the work included in and under the aforesaid contract," and "execute all the terms, conditions
and stipulations" of the CCSU project or else "indemnify and reimburse the [State of
Connecticut] for any loss that it may suffer through the failure of [PAC] to faithfully observe and
perform each and every obligation and duty imposed . . . ." Doc. #6-1 at 103, 105.

All Phase failed to pay several of its sub-subcontractors on the CCSU job. On February
18, 2016, PAC gave three days' notice of intent to exercise its contractual right to set off the
damages caused by several of All Phase's contractual breaches totaling $105,478.80, against
amounts PAC owed to All Phase on the JCC project in the amount of $52,169.29. Doc. #6-1 at
81. PAC listed one of All Phase's defaults as the failure to "Pay all vendors." Doc. #6-1 at 81.

Rather than cure the default, All Phase filed for Chapter 11 protection in the bankruptcy
court on February 23, 2016. In its petition, All Phase listed PAC as an unsecured creditor in the
amount stated by PAC in the three days' notice, and All Phase also listed its unpaid sub-

2

subcontractors from the CCSU project as unsecured creditors. All Phase listed the IRS as a secured creditor for hundreds of thousands of dollars and with preexisting liens on accounts receivable, including the receivable from PAC on the JCC project.

On March 30, 2016, PAC moved for relief from stay in order to exercise its right of setoff under § 553(a), asserting that the $52,169.29 it owed to All Phase on the JCC project should be offset by $84,217.86 of claims it had against All Phase for its failure to pay sub-subcontractors on the CCSU project and who might look to PAC for payment. To substantiate its claim against All Phase, PAC attached invoices from the unpaid sub-subcontractors, the contracts between PAC and All Phase authorizing the right of setoff, and the bonds obligating PAC to pay for all labor and materials on the CCSU project. All Phase did not enter any evidence of its own, request an evidentiary hearing, or dispute that it owed its sub-subcontractors the amounts stated.

On May 19, 2016, Chief Judge Manning granted PAC's motion for relief from stay for cause, allowing PAC to exercise its right to setoff under § 553(a). Section 553(a) provides, in pertinent part: "Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . ." 11 U.S.C. § 553(a). Chief Judge Manning concluded that PAC had an equitable right of setoff under Connecticut common law in order to "enforce the simple but clear natural equity" in this case, and that there was mutuality of debt as required under § 553(a). *See* Doc. #5 at 19 (citing *OCI Mtg. Corp. v. Marchese*, 255 Conn. 448, 463–64 (2001)). All Phase appealed.

**DISCUSSION**

On appeal pursuant to 28 U.S.C. § 158(a)(1), a bankruptcy court's findings of fact are reviewed for clear error, its conclusions of law are reviewed *de novo*, and its decision to lift the automatic stay to allow exercise of setoff rights is reviewed for abuse of discretion. *See In re Bennett Funding Grp., Inc.*, 146 F.3d 136, 138 (2d Cir. 1998). "A court abuses its discretion when its decision (1) rests on an error of law or a clearly erroneous factual finding; or (2) cannot be found within the range of permissible decisions." *In re Bolin & Co LLC*, 527 F. App'x 45, 47 (2d Cir. 2013).

The law of setoff (or "offset") is well-established. It "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995). Section 553(a) does not create a federal right of setoff, but rather preserves whatever right of setoff exists under applicable nonbankruptcy law, *ibid.*, even if the right of setoff "has the effect of paying one creditor more than another" would otherwise receive through the bankruptcy process. *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1164–65 (2d Cir. 1979). The Second Circuit favors enforcing the right of setoff, and will not disturb that right unless "compelling circumstances require it. . . . The statutory remedy of set off should be enforced unless the court finds after due reflection that allowance would not be consistent with the provisions and purposes of the Bankruptcy Act as a whole." *Id.* at 1165; *accord In re Bennett*, 146 F.3d at 139.

A party asserting setoff must first establish entitlement to that right under applicable nonbankruptcy law. After that, it must satisfy "additional restrictions" imposed by § 553(a): to show that there is a pre-petition debt that the creditor owes to debtor, that there is a pre-petition claim that the creditor has against debtor, and mutuality of these obligations. *See* 11 U.S.C.

§ 553(a); *Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 262–63 (3d Cir. 2000). Last, a bankruptcy judge should consider "the right of setoff in light of the Bankruptcy Code's goals and objectives" and decide, in its discretion, whether to allow setoff. *In re Bennett Funding Grp, Inc.*, 212 B.R. 206, 212 (B.A.P. 2d Cir. 1997), *aff'd*, 146 F.3d 136 (2d Cir. 1998).

All Phase advances three arguments in support of this appeal: (1) PAC did not prove its right to setoff as a matter of Connecticut law; (2) PAC did not prove that it met the "additional restrictions" of a pre-petition claim and mutuality; and (3) setoff would be inconsistent with the provisions and purposes of the Bankruptcy Act as a whole.

### 1. PAC's right of setoff under Connecticut law

The right of setoff exists under Connecticut law both as a matter of statute, and as a matter of equity. *See* Conn. Gen. Stat. § 52-139(a); *OCI Mtg. Corp. v. Marchese*, 255 Conn. 448, 463–64 (2001); *Mariculture Prod. Ltd. v. Lloyd's of London*, 84 Conn. App. 688, 703 (2004). Although the parties may provide as here for a contractual right of setoff, the right exists regardless whether the parties have set forth such a right by contract. *See OCI Mtg. Corp.*, 255 Conn. at 464.

In this case, All Phase does not contest the existence of the debt owed by PAC to All Phase on the JCC project or the debt owed by All Phase to its sub-subcontractors on the CCSU project. Nor does All Phase contest the independent obligation of PAC (and/or its surety) pursuant to the terms of the bonds to pay those sub-subcontractors upon All Phase's failure to do so, and the liability of All Phase to PAC when PAC (or its surety) does indeed pay those sub-subcontractors. *See Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency, Inc.*, 309 Conn. 339, 455 (2013) (legal or equitable subrogation); *Capstone Bldg. Corp. v. American Motorists Ins.*

5

*Co.*, 308 Conn. 760, 792 (2013) (right of indemnification by surety against principal); *In re Davicter Enter., Inc.*, 248 B.R. 794, 796 (Bankr. S.D. Ill. 2000).

Rather, All Phase speculates that there could potentially be several bars to the success of the sub-subcontractors' claims against PAC (or its surety): the sub-subcontractors might not have filed timely notice of claim against the bond under Conn. Gen. Stat. § 49-42(a)(1); they might not timely file suit to enforce payment on the bond pursuant to Conn. Gen. Stat. § 49-42(b); they might end up being paid less on their claims if they decide to negotiate with PAC (or its surety); or PAC (or its surety) may end up never paying the sub-subcontractors at all. But All Phase never sought an evidentiary hearing in the bankruptcy court, opting instead to wager that PAC might fail to meet its burden as the party asserting setoff. *See* 11 U.S.C. §§ 102(1)(A) & (B)(i); *In re Great Atl. & Pac. Tea Co., Inc.*, 526 F. App'x 25, 29 (2d Cir. 2013). On the basis of the uncontested record before the bankruptcy court—unpaid invoices showing the amounts due to the sub-subcontractors, the contracts requiring All Phase to pay its invoices and authorizing setoff, and the bond obligating PAC to pay for all labor and materials—as well as representations by counsel, there existed a sufficient evidentiary basis for the bankruptcy court to conclude that PAC held a claim against All Phase that gave rise to a corresponding right of setoff under Connecticut law. *Cf. Alfred Chiulli & Sons, Inc. v. Hanover Ins. Co.*, 294 Conn. 689, 694 & n.8 (2010) (*per curiam*). Any argument that All Phase's ultimate liability to PAC has not yet matured goes to the timing of the claim, not its existence.[1]

---

[1] Nor did All Phase request that the amount of the setoff be contingent on the amount of actual payment by PAC. *See In re Flanagan Bros., Inc.*, 47 B.R. 299, 300 (Bankr. D.N.J. 1985) (allowing setoff of full amount only "upon the performance by the general contractor of a certain condition set forth in the appended order").

### *2. The "additional restrictions" of a pre-petition claim and mutuality*

Section 553(a) requires that PAC hold a "claim" against All Phase that arose pre-petition. 11 U.S.C. § 553(a). All Phase asserts that PAC's claim against it did not arise pre-petition because the total amount All Phase would owe to PAC can be determined only from the post-petition event of PAC's actual payment of the sub-subcontractors' claims. This argument misses the mark. The Bankruptcy Code defines a "claim" as a right to payment, or right to an equitable remedy for breach of performance, whether or not that right "is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). A claim "means nothing more nor less than an enforceable obligation." *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991).

In this case, all of the events giving rise to PAC's claim against All Phase occurred pre-petition: the contract obligating All Phase to pay its sub-subcontractors, All Phase's failure to pay the sub-subcontractors, PAC's notice of intent to exercise its right of setoff, and PAC's independent, pre-petition obligation to pay the sub-subcontractors. A "claim" exists even if it is unliquidated, contingent, unmatured, or disputed; as such, "dependency on a postpetition event does not prevent a [claim] from arising prepetition." *U.S. ex rel. Agric. Stabilization & Conservation Serv. v. Gerth*, 991 F.2d 1428, 1433 (8th Cir. 1993); *see also In re Davicter*, 248 B.R. at 797 (that general contractor had not paid unpaid materialmen pre-petition did not render its claim against debtor/subcontractor a post-petition one, even if, pre-petition, "it was not readily apparent that [the general contractor] was liable for payment of [the materialmen's] claims"); *In re Fulghum Const. Corp.*, 23 B.R. 147, 152 (Bankr. N.D. Tenn. 1982) (owner that made post-petition payment to contractor's unpaid subcontractors had pre-petition claim against contractor; court pointed to trustee's failure to enter any evidence contesting the validity of the claims, and

noted that payment speaks to the ultimate amount of the claim, not its pre-petition existence); *cf.*
*Employers' Liab. Assurance Corp. v. Crandall*, 22 Conn. Supp. 404, 405–406 (1961)
(subrogation of surety who pays on bond issued pursuant to § 49-41 relates back to date of
bond). PAC's future right to payment from All Phase arose from facts occurring pre-petition, and
no evidence was presented to contest this right to payment. *See In re Bolin*, 527 F. App'x at 48
("a setoff that is not properly opposed must be granted"). The bankruptcy court properly
concluded that PAC's claim arose pre-petition.

  All Phase next asserts that its debt and PAC's claim are not "mutual," not having been
incurred by the parties "in the same right or capacity." *In re Bennett*, 146 F.3d at 139. Mutuality
requires each party to be both "obligor and obligee," which may be measured "at different times
out of different transactions." *Meyer Med. Physicians Grp., Ltd. v. Health Care Serv. Corp.*, 385
F.3d 1039, 1041 (7th Cir. 2004).

  All Phase first asserts that there is no mutuality because the amounts at issue arose from
two separate projects. That is wrong. *In re Bolin*, 527 F. App'x at 47 (citing cases, and noting
that, "to satisfy § 553's mutuality requirement, debts need not arise from the same transaction");
*In re Larbar Corp.*, 177 F.3d 439, 446 (6th Cir. 1999) ("We do not find . . . any authority for the
proposition that the underlying project owner is a relevant party in determining whether
mutuality exists under § 553 between a general contractor and its subcontractor.").

  All Phase next asserts that mutuality is lacking because All Phase does not currently owe
any money to PAC, but rather owes money to the sub-subcontractors. Doc. #5 at 11. This is a
"triangular setoff" argument—that setoff is inappropriate "where the creditor attempts to set off
its debt to the debtor with the latter's debt to a third party." *In re SemCrude, L.P.*, 399 B.R. 388,
393–94 (Bankr. D. Del. 2009), *aff'd*, 428 B.R. 590 (D. Del. 2010).

All Phase cites only to *In re SemCrude* for its triangular-setoff argument, but that case is distinguishable because it involved lack of mutuality between one creditor and admittedly distinct debtor companies, which could not be cured by a private agreement purporting to confer mutuality on non-mutual debts. *In re SemCrude*, 399 B.R. at 396. The *In re Davicter* case is more on point, in which mutuality was established with claims and parties strikingly similar to those of this case. 248 B.R. at 797. Chief Judge Manning did not abuse her discretion, or commit legal error, in concluding that mutuality had been established, particularly in light of All Phase's failure to challenge All Phase's ultimate liability to PAC when PAC (or its surety) pays the sub-subcontractors.

### 3. Setoff is consistent with the purposes of the Bankruptcy Act as a whole

Lastly, All Phase asserts that the setoff here would be contrary to the spirit and purpose of the Bankruptcy Act, arguing that it would result in PAC's unsecured claim being paid in full, over other creditors' unsecured claims that will not be paid. But this is a result plainly foreseeable and acceptable to Congress and the courts as inherent to the limited right of setoff as permitted under § 553(a). *See Bohack Corp.*, 599 F.2d at 1164–65 (the favored right of setoff "has the effect of paying one creditor more than another").

All Phase further argues that setoff is inconsistent with the Bankruptcy Act as a whole, because it impinges on the rights of the IRS as a secured lienholder for All Phase's accounts receivable. But setoff as allowed under § 553(a) is not restricted only to secured creditors, and when the conditions of § 553(a) are satisfied involving a claim of an unsecured creditor, there will almost certainly result a disadvantage to secured creditors. Again, in the absence of additional restrictions on the right of setoff as allowed under § 553(a), there is no basis to

conclude that allowing setoff here is incompatible with the Bankruptcy Act. In any event, the IRS had notice of the setoff motion, and it has not objected.

## CONCLUSION

In short, I conclude that the decision of the bankruptcy court should be affirmed, because all of the requirements for setoff have been established here: (1) PAC was entitled to setoff as a matter of Connecticut law; (2) PAC established that its claim was pre-petition and that there was mutuality; and (3) setoff is not inconsistent with the Bankruptcy Act. Accordingly, the decision of the bankruptcy court is hereby AFFIRMED.

The Clerk shall close this case.

It is so ordered.

Dated at New Haven, Connecticut, this 24th day of October 2016.

*/s/ Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge